**IRON MINES COMPANY OF VENEZUELA, Libellant,**

v.

**SS COSMIC, her engines, boilers, etc. and Home Shipping Company, S. A., Claimant-Respondent.**

**HOME SHIPPING COMPANY, S. A., Petitioner,**

v.

**INTEROCEAN SHIPPING COMPANY, Respondent-Impleaded.**

**No. 63 AD. 77.**

United States District Court
S. D. New York.
April 8, 1966.

Mendes & Mount, New York City, for libelant (and for Interocean Shipping Co.)

Hill, Betts, Yamoaka, Freehill & Longcope, New York City, for respondent.

## MEMORANDUM

FRANKEL, District Judge.

In two motions, consolidated and substantially identical in all material respects, respondents-impleaded, invoking Section 3 of the Federal Arbitration Act, as amended, 9 U.S.C. § 3, seek to stay pending arbitration the proceedings upon the impleading petitions brought against them. The pleading facts of one case are sufficient for statement and resolution of the common problem.

On August 31, 1955, Home Shipping Company, a Greek corporation, (the "owner"), time-chartered its vessel, the SS Cosmic, to Interocean Shipping Company, a Liberian corporation (the "charterer"). The time charter party provided for arbitration of "[a]ny and all differences of whatsoever nature arising out of [the] Charter. * * *" It provided further that "questions arising under [the] Charter are to be governed by the laws of the United States. * * *"

From time to time, at the charterer's direction the Cosmic put in at the Venezuelan port of Puerto de Hierro to take on cargoes of iron ore from the pier of Iron Mines Company of Venezuela, the libellant. (As will later appear, the owner urges as one ground for denying the stay sought on this motion the existence of a corporate kinship between the libellant and the charterer, namely, that the libellant is a subsidiary of Bethlehem Steel *Company*, the parent of Bethlehem Steel *Corporation*, which in turn is parent of the charterer.) The libellant's action against the owner is for damages to the pier and its appurtenances allegedly caused by the ship's violent swinging on three occasions. The libel alleges that those in charge of the vessel were negligent at the times in question, failing adequately to control its speed and movements, and that such negligence was solely responsible for the damages claimed.

In the impleading petition which concerns us at this time, the owner sets out an indemnity provision; a paragraph requiring the charterer to "pay for all * * * pilotage * * * tugs necessary for assisting the Vessel in, about and out of port * * *"; a provision that the master, "although appointed by the Owner, shall be under the orders and direction of the Charterer as regards employment of the Vessel * * *"; and a provision for employment of the vessel at any place the charterer directs "where the Vessel can always safely lie afloat." Building upon these contract terms, the petition alleges that if the libellant is entitled to recover at all, the liability must ultimately be the charterer's either (1) for its failure to supply tugs at the times in question or (2) because of its obligation to indemnify the owner.[1]

It seems evident, therefore, at least as between owner and charterer, that the

---

1. The facts and contentions thus far summarized are those in Iron Mines Company of Venezuela v. SS Cosmic et al., 63 Ad. 77. The second motion, contested by the same counsel on both sides, is in Bethlehem Steel Company v. The SS Epic et al., 63 Ad. 366. In the latter case, the owner says there are "two important factual distinctions": (1) that the charterer provided tugs carelessly selected or negligently operated rather than no tugs at all, a case of misfeasance rather than nonfeasance; and (2) that the charterer is a subsidiary rather than an affiliate of the pier owner. We have not divined, and the arguments of counsel have not suggested, how these distinctions might make a difference for present purposes.

impleading petition asserts claims "arising out of [the] Charter." Indeed, this much is conceded.[2] Nevertheless, the owner says, there should be no stay under the Arbitration Act because

(1) arbitration is not available as between the libellant and the charterer (see footnote 1, supra);

(2) Admiralty Rule 56 is designed to dispose of related claims in a single proceeding;

(3) a respondent is entitled to use Rule 56 as a means for tendering an impleaded respondent to a libellant for direct recovery; and

(4) the corporate veils of libellant and charter should, as the saying goes, be pierced, the apparent suggestion being that libellant would itself have sued the charterer were it not for their family ties.

We conclude that these arguments must fail.

 It is true, of course, that Admiralty Rule 56 provides a means for expeditious resolution of interrelated claims. However, the Rule does not *require* impleading petitions; it merely allows them. If there had been no arbitration agreement, the respondent owner could have chosen whether or not to implead the charterer. Having agreed to forego court proceedings in favor of arbitration, it is in no position now to claim the same freedom of choice. We see no reason to depart from the few pertinent cases unearthed by counsel's and our researches; in all of them this kind of effort to avoid the duty to arbitrate has been unsuccessful. Giuffre v. The Magdalene Vinnen, 152 F.Supp. 123 (E.D.N.Y.1957); General Foods Co. v. S.S. Wildwood, 1942 Am.Mar.Cas. 60 (S.D.N.Y. 1941); Jamison v. S.S. Rondo, 1935 Am. Mar.Cas. 783 (E.D.N.Y.1935); Cf. Peter Pan Fabrics, Inc. v. Kay Windsor Frocks, Inc., 187 F.Supp. 763 (S.D.N.Y. 1959); Greene Steel & Wire Co. v. F. W.

Hartmann & Co., Sup., 235 N.Y.S.2d 238 (Kings Co. 1962).

It adds nothing to say, as the owner does, that it has a "right" to give libellant, willy-nilly, an added party from which to claim recovery. The short route to that objective is open to libellant itself. The decisive point remains that it is not a way around the owner's agreement to arbitrate.

Nor, finally, is the picture changed because libellant and charterer are related corporations. There is no intimation that the corporations are not separate in all relevant respects. There has been no fraud. The owner appears to have known the corporate facts all along. There is, in short, no ground on which it can demand arbitration with a libellant who did not agree to it or avoid arbitration with a charterer who did. Cf. Fisser v. International Bank, 282 F.2d 231, 237–241 (2d Cir. 1960).

The motions are granted. Settle orders on notice.

---

2. "There is no question that the obligation of the Charterer to the Vessel Owner is subject to arbitration as a dispute under the charter party, but the obligation of the Charterer to the Pier Owner is not subject to arbitration." Memorandum in Opposition to Motion of Respondent-Impleaded, p. 6.